Good afternoon, your honors. If it pleases the court, my name is Paul LeBlanc. I'm representing the appellants in this case. This case, this appeal involves a matter of this tax abstention doctrine. Rarely litigated, but a very important part of the abstention doctrines that are fairly straightforward. The tax abstention doctrine, like all the basic abstention doctrines that flow from federalism concerns and issues of comity, arose and is premised upon the notion that a court sitting in equity, dispensing equitable relief, or being asked to dispense equitable relief, enjoys the discretion to decline to exercise that jurisdiction. That's always been the premise of the tax abstention doctrines. In our briefing, we've gone through those cases, Boise, Matthew v. Rogers, Great Lakes Dredge, culminating in Quackenbush. Quackenbush, of course, v. Allstate, 1996 U.S. Supreme Court, dealt directly with Burford, but addressed all the abstention doctrines, Pullman, Burford, Thibodeau, and noted that their common origin of all these abstention doctrines is that discretion enjoyed by a court sitting in equity to decline to hear a case. It's not declining the jurisdiction of the court. The court has jurisdiction. It simply declines to exercise that jurisdiction because a court in equity has the right to do that. That's always been the premise of the tax abstention doctrine, and that continued through to Levin in 2010, when the U.S. Supreme Court addressed the issue of the tax abstention doctrine again. As the Court is aware, in 1937, the Tax Injunction Act was enacted by Congress, which partially codified the pre-existing tax abstention doctrine. Do you agree that this case doesn't involve the Tax Injunction Act? Correct, Your Honor. And can you read Quackenbush in the context of Levin such that they're consistent, or are you saying that we should follow Quackenbush instead of Levin? No, Your Honor. We feel that Levin and Quackenbush are entirely consistent. Levin involved a court sitting in equity being asked upon pursuant to the Declaratory Judgment Act, the original action was filed under that act, being asked to dispense declaratory and injunctive relief to invalidate a state court tax scheme. In fact, interestingly enough, in Levin, it was a request for relief that would have actually resulted in the state earning more revenue because what the plaintiff was seeking to do was have the state be ordered by the federal court to invalidate exemptions that their competitors enjoyed and collect taxes from those parties. Again, the court acting entirely consistent, citing Great Lake Dredge and Boise and the other precedents that are applicable to the tax abstention doctrine, applied the notion that a court in equity has the discretion. And in fact, what the court in Levin did was it set forth factors to consider in terms of whether under the circumstances of that case it was prudent in the exercise of discretion to abstain from the case. I think what's happened, Your Honor, and this is what happened in the lower court here, it's happened in some other district courts and indirectly with the Seventh Circuit, though of course in the city of Fisher's case they ultimately decide not to address Quackenbush and the notion of the equity abstention doctrine. But what's happened is courts have seen Levin and sort of taken the notion that there are these multi-factor balancing tests and applied it in every situation where there's a tax dispute involving local or state taxation, forgetting that the premise of the application of the abstention doctrine, you start out with, you have to have a claim and action arising not in law but in equity, which seeks to invalidate or interfere with the state law on taxation to vindicate a federal right. These are the requirements. And of course federalism is simply saying when the court's in there applying its discretion, you should consider the fact that the state, if it has an adequate remedy at law, that that is the proper way or that is the proper way from a point of view of federalism to allow the matter to be redressed through the state court system or through the state law action. Let me just, I actually slipped there for a moment, not through a state court action, through a state law action. I want to point out, and if you go back and read the early cases, Boise, Matthew v. Rogers, those cases are very clear by the U.S. Supreme Court. What they're concerned about is whether there's a state law action at law that can be pursued, not whether it's being pursued in state court or federal court. In Boise, the court noted, well, you know, there was an action by the city council to enforce the license tax in that case. The court near the end of the opinion notes, presumably, the plaintiffs in this case could have removed the case to federal court and had the action at law heard there. In Matthew v. Rogers, I mean, let me quote the language there. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts from which the cause may be brought to this court for review if any federal question is involved or to his suit at law in the federal courts if the essential elements of federal jurisdiction are present. Now, the remedy at law at issue there was a Mississippi statute that provided if you pay your taxes under protest, you could sue to have those taxes returned to you on the basis that the tax statute is invalid, in this case, a violation of the federal constitution. Excuse me. I apologize. I've got a bit of a head cold here. And what the court's saying there in Matthews is that once the taxpayer pays those taxes under protest, they can proceed with a suit at law in state or federal court because the Mississippi law is what's relevant, not the court. What's happened somehow is that the notion has arisen that whenever you have a suit involving state or local taxes in a federal court, that there's an abstention issue. That's entirely inaccurate. There has to be some sort of federal basis for interfering with the law, and there has to be a request that the court act pursuant to its discretionary authority to essentially issue rules, issue regulations, issue injunctions that will change or modify the state law. So what's our standard of review here? Your standard of review here in this particular case, it's de novo because our position is because the tax abstention doctrine is not applicable on these circumstances, that when you apply multiple, if in fact we were in a situation where we were in an 11 circumstance, where you had a request for declaratory injunctive relief asking the court to invalidate part of Louisiana's tax scheme, then you would review for abuse of discretion the district court's use or application of the 11 factors. You're saying we just never get to the 11 factors because it's a matter of law. These cases can't, there is no basis for abstention in an action for a money judgment, an action at law. Correct. This isn't a money judgment, like damages or that sort of thing. The city and the parish came against the taxpayers saying you've got to pay this tax, right? Correct. I mean, I guess I'm just struggling to see the distinction. They're pursuing this action pursuant to a statute, Louisiana statute, that provides them the right to seek a judicial remedy in any court of competent jurisdiction under the same principles as the general law applicable to all obligations. So it's the same sort of action they would assert if they were seeking to get paid under a contract or to get damages for tort. So I think absolutely this is an action at law, has to be classified as such. I note that in Matthew versus Rogers and... But isn't the question whether the action is going necessarily to involve and impugn the Louisiana tax scheme that's at issue? No, Your Honor, it's not. The predicate to reaching that issue is, is there a request in which the court has discretion to decline to exercise its jurisdiction? Is there a request for relief, declaratory or injunctive? A request which seeks to interfere with Louisiana tax laws? If that is the case... The city and the parish are not going, neither one of them is going to come in and seek to interfere with the Louisiana tax laws, but it seems to me that the taxpayers' resistance to paying the tax has everything to do with resisting, construing, impugning the Louisiana tax laws. Absolutely. I mean, is it, is it, is the difference because of who's on which side of the V? The difference is because of the power the federal judge is being asked to exercise and his discretion to decline to issue that, that, that relief or not. Well, what, what's, what the federal courts are being asked to exercise is sort of supervisory plenary authority over interpreting the Louisiana tax procedures, which I thought was the whole purpose behind the tax abstention doctrine. I would have to respectfully disagree, Your Honor. That's not the premise of the tax abstention doctrine. The premise of the tax abstention doctrine is that when a federal court has discretion, when it's acting as a court of equity and has the discretion to consider factors such as public policy, then it is appropriate for it under certain circumstances, under the factors outlined in 11, to abstain in the exile of that jurisdiction. It has no discretion to abstain from an action at law for a money judgment. That is the basic premise of the tax abstention doctrine. Remember, the premise here is that state law provides an adequate remedy. That's the adequate remedy of law. The one in, in, in Boise is an action by the city council to enforce a tax. The action at Matthews is an action by the taxpayer to seek a refund. And in both those cases, the court expressly noted those actions could be brought in federal court. It's not a matter of the court, Your Honor. It's a matter of the law that's being vindicated. A federal court is an impartial arbiter and is just as capable of making a fair decision in correctly interpreting state tax laws as a state court. That's not the issue. The issue is whether or not something about this action is going to change state tax law because of a supervening federal standard being imposed. That standard being a judge sitting in equity, acting in his discretion to decide what the right result is, or some federal statute being applied. That's the whole basis for the application of, the whole basis for the private trucking council case and the fair assessment case, talking about Section 1983. Those cases, again, they stand for the proposition that abstention in some form, and in this case, by Congress and not including in Section 1983, the basis for challenging state tax law. The, excuse me. I do apologize. Let me ask you something. If you win on the courts and you don't have to pay these state tax bills, doesn't that disrupt state tax administration?            I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. If you win on the merits and you don't have to pay these taxes, doesn't that disrupt state tax administration? No more so than if a state judge ruled that we would win on the merits and we wouldn't have to. The, simply, simply defending, simply defending yourself in an action at law has never been a basis for tax abstention. There is no recorded case where an action at law was abstained from by a federal court on the basis of tax abstention. The issue of what judge makes a ruling is not, is not, it's not a basis for abstention. The basis for abstention is when there's going to be the changing of state tax law by virtue of some federal decree. That's the interference. That's where federalism comes to court. Just like federal judges are competent to preside over and adjudicate all manner of state law disputes. This is no different. The only issue arises when you have equitable relief being, being granted in a way that will disrupt the state tax scheme. And I would point out as well, keep in mind, when a federal judge adjudicates state law and interprets it, it's enforcing state law. It's not interfering with it. The notion that a federal judge is incompetent to pass on a state tax law is just not a principle that's reflected anywhere in any of this jurisprudence. So, go to state court. Well, I think, Your Honor, the reason we're in federal court is because the basis for diversity of jurisdiction, that we think we get a fair shake in state court. We're a big, we're large casinos and hotels, and obviously this is a tax collection scheme. We would like to be someplace where we have an impartial tribunal. That's the whole purpose of the federal court's diversity of jurisdiction, and what this case is really about is whether the lower federal courts can disregard that jurisdiction, despite being, it being fixed by Congress, and send these cases back down to a state court that, in all fairness, is more likely to be biased against clients like mine. I want to reiterate, because I hear the questions here, that the concern, again, has never been that a federal judge is not competent to hear these cases. It's always, these cases always arise in a specific context where a federal judge is being asked to utilize discretionary power to change, interfere with, alter, modify state tax law, not to enforce state tax law. But you're not seeking to enforce the state tax law. You're seeking to avoid it. If the state tax law properly applied results in my client not paying taxes, that's the enforcement of the state tax law. I don't think, Your Honor, it's fair to conflate success in the city parish's position with enforcement of the state tax laws. The state tax laws are created. To go there, we've got to look at the, what is it, the Louisiana Board of Tax Appeals. We've got to look at that Jazz Casino case, state court case. We've got to look at, there are parallel proceedings, I think, pending on these very issues from Shreveport, Bossier, I can't remember which cities around the state that go well beyond East Baton Rouge, Paris, and Baton Rouge. And so the reality is, there's nothing federal here for a federal court to do. It's all invading the province of the state tax regulations and regulators. I would make a simple point. The argument the court laid out sounds a lot like a Burford argument, that it's a complex state administrative scheme. And under Quackenbush, you couldn't abstain from this case under Burford. I guess the question posed by our appeal is, why is tax abstention... It's more like Younger, isn't it? This is something that, or maybe I'm confusing my abstention doctrines, but this is something the federal courts just ought not get into because it's really the province of the state court. I think we cite the case in our brief under Younger as well, there would be no basis to abstain. Younger, again, involves not simply review of a criminal proceeding or adjudication of a criminal proceeding, it involves a request for an injunction to halt, to stop, to modify, to limit. That's the difference here. Simply having a federal court preside over a state law dispute is not a basis for abstention. That's always been the basis, and you go back to, again, these earlier cases, they clearly recognize that federal court is a perfectly acceptable venue for an action at law in which the federal rights can be vindicated. That's precisely what this is. So are you going to accept it when the district courts say, we keep it in federal court, says judgment for the city, judgment for the parish because the tax injunction act prohibits the federal court from enjoining or doing anything to frustrate the collection of the tax at issue? I think as the court below found, and as we correctly argued, there is no tax injunction act issue because we're not seeking an injunction. There's not one yet. Well, if we were to amend. I'm just asking the hypothetical. If the district court comes in and says, you lose because the tax injunction act, you wouldn't have that prescription in state court, but you'll accept it if that's what the federal court determines ultimately here. It's a factor to be considered under Levin, precisely because. It's not a Levin factor at this point. You're saying Levin doesn't matter. So we get into claims by the city and the parish and defenses from the taxpayers and the defenses effectively are, we don't want to pay this tax. And so the district court says, well, I can't do that. I'm powerless to afford you that relief because of the tax injunction act out judgment for the plaintiffs. You accept that? I disagree with the court's premise. The tax injunction act wouldn't apply to a defense in this case. It applies to injunctions, which is relief granted by a court sitting in equity that's prospective by its very nature and halts anticipated conduct. Simply defending yourself in an action where you're being asked to pay taxes is an action at law. And that's one of those cases recognized entirely appropriate. And again, in Boise and in Matthews, the U.S. Supreme Court especially recognized could appropriately be heard by a federal court. So and I think. Thank you, counsel. I do apologize. Thank you, Your Honor. Thank you, counsel. Mr. Talbot. Counsel, you have three minutes for rebuttal. May it please the court. My name is Drew Talbot. I'm here today on behalf of the city of Baton Rouge Parish of East Baton Rouge. Allow me to be the last of the advocates to wish Your Honors a good afternoon. We appear before you to request that you affirm the district courts. And there's two district court rulings here. We've consolidated these two cases for appeal purposes that found that under the doctrine of comity and the tax abstention doctrine that these two cases are more appropriate to be fully litigated in the state court. What I'd like to do, and I believe my briefing may have failed in this regard, is to give this court a little bit of context from how we got to the point where the lawsuit was filed by the city parish. So originally when an audit begins, and that's how both of these cases began, with an audit, Louisiana revised statute, Title 47, Section 337.26, requires that a notice be given to the target of the audit. In this case, the city parish sent that notice by certified mail. What does that notice do? Well, the statute requires the notice to do certain things, which there's no issue in this case. The notice is complied. It said you're going to be audited. It relates to sales and occupancy tax. Here's who's going to be doing the audit. Here's the period that we're auditing. However, the city parish's notice went a little bit beyond what is normally required by statute to be included and said, hey, here's your rights and remedies in what we call the Uniform Local Sales Tax Code in Louisiana. And maybe, I don't want to be too presumptuous, let me back up and give a little bit of context. In Louisiana we do things a little bit different when it comes to sales and use tax collection, administration, and enforcement. We have our Department of Revenue to collect state sales tax, but unlike most other states where the state collector collects all local sales taxes as well in Louisiana, that's done on a parish-by-parish basis. The city is the collector for East Baton Rouge Parish. How was it discovered that the rooms being provided to customers were not being taxed and you weren't being taxed on that revenue? How was that discovered? That was discovered in the course of those audits. What happens is our auditors go in, they request certain records. I mean, are audits regular? You have them every now and then? Yes. In fact, Title 47, Section 337.35, and forgive me for giving all these numbers, but that's just how they're numbered, 35, requires that collectors conduct audits from time to time of all businesses operating in the parish. So these were part of routine audits. Records were requested. Those records showed that even for the so-called comp rooms, the casinos were booking revenue numbers, and then through a ñ I don't want to go on the merits too much, but some gap accounting rules and some consideration that's unique to the casino hotel industry, we view the jurisprudence in the state of Louisiana supports a finding that even though these rooms are ìcomped,î that there is an element of consideration that is subject to local sales and occupancy tax. Isn't there some sort of administrative process that we go through with an assessment where you confront the taxpayer with the unpaid amounts, and they try to resolve those short of filing in a court of law? Absolutely correct. And that's already happened in this case in the state administrative tax system? So to make sure that we're talking about the same thing, and this goes really to the heart of the issue here, so I appreciate the question. Title 47, Section 337.45, it's not just some statute thrown in there about what's taxable or what's not taxable. That is an integral statute that gives the collector options for enforcement of underpaid tax, and there's three options. Number one, a summary proceeding, which is really a quick trial with some unique rules. Before whom? Before either a district court judge in the state of Louisiana or the Board of Tax Appeals. There's the assessment and restraint procedure, and to be fair, that's used 90-plus percent of the time. So after an audit is concluded, the findings will be presented to the taxpayer in the usual course with what's called a notice of intent to assess. Thirty days are allowed to consider that notice. A taxpayer can object. They can request a hearing, which is done at the administrative level with the collector. And then if there's still disagreement or there's still a finding, a notice of assessment is issued, and that gives 60 days to the taxpayer to protest or appeal, and they can file a suit in district court or file at the Board of Tax Appeals. Or, and this is key, or an ordinary proceeding is allowed. And in 337.45B, the legislature in Louisiana has allowed that a collector has the option to start under one collection and enforcement procedure and shift to another, and to choose them as the collector finds appropriate. So what happened in these cases? Well, the collector, at the time the audit was concluded, looked at it and said, we're going to go directly to an ordinary suit. And why would a collector do that? Why would a collector forego this administrative process? Well, you'll notice in the record that these suits were filed on December 30th. So it relates primarily, at least in this case, to prescription concerns. And to give credit to everything the casinos have alleged, even under their standard, which, as I believe the suggestions from the court, from the questioning shows, is a more rigorous standard or a more strict standard than is appropriate under the law. But even under their announced standard, that the only way we can deal with comity and abstention is if we have a federal question or federal constitutional claim, and then and only then do we apply these abstention doctrines. Let's look at how they answered our petitions. And that's in the record. And what I would note is, and look, as an attorney for collectors, I routinely see defenses from very capable, well, very sophisticated taxpayers and very capable lawyers, and they assert a whole litany of defenses. And they have every right to do so, and they have every right to proceed under all those defenses that they assert. But in this case, there are consequences for some of those defenses that are asserted. And so, again, using even their suggested most rigorous test before abstention is applied, look at Roman numeral 7, 8, and 9 in their affirmative defenses. What do they say? They say the defendants show that plaintiffs' claims are premature to the extent that plaintiffs were required to pursue the process and allow the remedies set forth in their notice of examination. That's that original letter that says you're going to be audited. But fail to do so and fail to advise of any alleged amount due or allow defendants an opportunity to accept, object to, or administratively challenge the same prior to filing suit. And then the one that may be the most at issue cited by the district court, defendant, and this is affirmative defense 9, defendants show that plaintiffs' claims are barred to the extent they violate due process or the uniformity clause of the Constitution of the State of Louisiana. Now, when I read that sentence, I put a pause in there. I hear my mother's voice in my head. She was a retired English teacher. So the question is, on that affirmative defense, of the Constitution of the State of Louisiana, what does that modify? Does that modify this uniformity clause or does this modify both violation of due process and the uniformity clause? So let me read the sentence again with that concept in mind. Defendants show that plaintiffs' claims are barred to the extent they violate due process or the uniformity clause of the Constitution of the State of Louisiana. So what the casinos have argued is that in this case, we do not have the court doesn't sit in equity. We do not have a federal question. We do not have a federal constitutional issue. And my answer is we do. Even under their test, we do because due process, they put due process at issue due to this issue about going straight to ordinary proceeding. They've made that an issue, and I don't want to minimize how significant of an issue that that is because let's play this out. Let's say that the federal district court hears this case, adjudicates all the claims. Let's say that on the merits, for one reason or another, the district court says that sales and occupancy tax should have been charged by these casinos and remitted to the city parish on complimentary rooms. Let's say that. But then we have to get to the affirmative defense. And let's say that the federal district court says, but city parish, you have violated the due process rights of these casinos because you didn't go through the assessment and restraint procedure. That I cannot overstate how significant of a ruling that would be, how impactful on how collectors, not just the city parish, but all of the local collectors and the Department of Revenue, for that matter, would proceed because what it would effectively do is it would declare 337.45 unconstitutional. All right. Well, that's if the court gets there. If the court gets there. And those are arguments for abstaining that the district courts, plural, adopted, more or less. But counsel opposite's argument, as I obtain it, is, well, none of this comes into play because this is a suit by the city of the parish to collect an amount of money, money damages. And to get into abstention doctrines, we've got to get into equity courts exercising their equitable powers. And that's not really here. So do we even get to Levin? Do we even get to the abstention doctrine per your friend on the other side's position? And I would argue that we do. And the reason is, first, this was not just a suit for money damages. It was a suit for taxes due for an audit period, but it was also a declaratory judgment action. And let's play this out. Let's play this out in the context of this affirmative defense. So the declaratory judgment portion of the city parish's suits seeks a declaration that this transaction, that I've briefly described, is subject to tax for an entire period that goes beyond the audit period. So as I appreciate this due process argument, that can only relate to the audit period. So even if the court was to grant this due process argument, there would still be a portion of the city parish's claim that relates solely to this declaratory judgment action. But then I would suggest that the court is sitting in equity to adjudicate this affirmative defense, this due process argument raised by the casinos. It has to. And the remedy, if the court were to agree with that affirmative defense, is to declare 337.45 in Title 47 of the Louisiana Revised Statutes to be null, void, invalid, unconstitutional. So I do think we get to the abstention doctrines. And then if we do, Levin applies, and this court is reviewing the district court's decisions on the applicability of Levin for an abuse of discretion standard. So what you can read from the report and recommendation by the magistrate judge, and that was adopted by both district courts and it was substantially identical for both cases, the report goes in great detail through the five Levin factors. And let's go through them just real briefly, and I know this is in our brief, so I'll move along here. But we're going to review matters under the first Levin factor where the state enjoys wide regulatory latitude. And I can't think of a better example than in the context of state and local taxation. The suggestion by the casinos was this is the regulation of hotels, and that's not something where the state enjoys wide regulatory latitude. And I would suggest that it's not just hotels. It's casinos. And these cases really are unique. There are some other cases that are a little bit further along, as Your Honor alluded to. I do happen to represent the parish of Bossier against three of their casinos in the Board of Tax Appeals. I don't want to conflate facts from those cases to the facts that have not yet been developed in these cases, but let me just suggest to the Court that what's really being regulated here is the uniqueness of the relationship between the hotels and casinos. And casinos, Louisiana being one of a handful of states that have casinos, that's a very significantly regulated industry. The second Levin factor, the claimed constitutional violation does not require heightened judicial scrutiny. And so right there, this due process violation that has been alleged as an affirmative defense by the casinos does not require heightened judicial scrutiny. It should be noted that to the extent there's an argument about whether or not a federal constitutional due process argument has been asserted or, again, you know, harkening back to the way my mother talks about how phrases modify other parts of a sentence, this may just be a state due process argument. The Louisiana Supreme Court has held that there is no difference between the due process clause in the 14th Amendment of the United States Constitution and the one in the state of Louisiana Constitution. There is no difference. It's the same. And if you look at the report and recommendation, I believe there's an assumption that can be drawn from reading that report and recommendation that the Court was under the impression that this was a federal due process argument. Nevertheless, the issue of state versus federal constitutional claims and whether it's only federal constitutional claims that had to be presented in order to trigger these abstention analyses, that was not really an issue that was presented to the district court. The third of the Levin factors is the party is seeking federal jurisdiction to improve its competitive position. I agree with everything the report and recommendation said on this point. I'm not going to suggest, I would never suggest that a federal judge could not adjudicate these claims. Absolutely not. This is not rocket science. Anybody can get in there and figure it out. I will say that what's very important, as you acknowledged, Your Honor, was the Jazz Casino case and its applicability. We have, and it's going to be seen in the briefing, very different opinions on the applicability of jazz to the merits of this case. I appreciate reading in the reply brief by the casinos that the courts are going to follow the Erie Doctrine. They're going to look to this precedent, and they're going to be bound by it to the extent they are required to. There's an argument about whether the Louisiana Supreme Court weighed in or not on the merits of this issue with their partial writ grant, partial writ denial of the Jazz Casino case. Let me just say that while I think this is a push, just like the district court wrote, in terms of which factor militates in favor of remand or keeping the case, I'll suggest that the best court, perhaps, to discuss the applicability of the Jazz Casino case is the one that rendered the opinion in the first place, the Louisiana First Circuit Court of Appeal. We don't get there through the federal district court. We do get there through the 19th JDC, where these cases originated. The fourth levin factor is that the state court is more familiar with the state legislative preferences on the issue of the merits. I think that's fairly self-evident, given the issues before the court on the merits. And then finally, the federal court's remedial options are constrained. And Judge Wilson, I believe you hit the nail on the head when you talked about the Tax Injunction Act and how that might constrain a federal judge from ruling on the merits of the underlying tax claims in this issue. But again, taking the standard most beneficial to the casinos that they've asserted, does the federal court feel like it could enjoin Louisiana's collection methodologies by prohibiting it from filing an ordinary suit without first going through the administrative assessment process? It's somewhat counterintuitive, but I believe that the casinos' claims, including their due process claims, could be better and more fully adjudicated in state court. And that's why we've sought to have this court affirm the rulings by both district courts below. Let me now, with the time I have remaining, unless your honors have any questions, I can give you something way outside the scope of the briefing. Perhaps I regret that the court ruled as quickly as it did on the motion to remand, because things are about to really get crazy in this case. The last briefing to this court was February 12th. And since then, the Louisiana legislature has commenced a regular session, and as of yesterday, concluded a regular session. One of the bills that's been passed but not yet signed into law, it was sent to the governor for signature, was a law that is directly on the merits of this case. And the legislature says that a municipality like East Baton Rouge shall not levy a tax on complimentary rooms. That was a law that was just passed. Well, not a law, it's a bill that was just passed, about to be signed into law. And I'm certainly happy to further brief this issue if the court finds it relevant or warranted. But Section 2 of that bill says that this provision is clarifying and interpretive. It originally, the original version of the bill said it's retroactive, but the retroactive part was taken out, but the clarifying and interpretive was left in. So in other words, what I'm suggesting to this court is that if this case were to be remanded to federal court, the city parish will likely be challenging that tax relief provision on a number of state constitutional grounds. But that may be a little bit outside the scope of what we're dealing with here today. I just didn't want to be back here in six months or a year and somebody asked me, why didn't you tell us about this at the time? So if your honors have any further questions, I'm happy to answer them. If you'd like any further briefing on that last issue that I talked about, certainly happy to oblige. All right. Thank you, counsel. Thank you all for your time. Bill LeBlanc, you have three minutes of rebuttal time. Thank you. I'd like to read from the Hody and Quackenbush. Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles. Only where the relief being sought is equitable or otherwise discretionary. We, the defendants, are not seeking any equitable or discretionary relief. A constitutionality defense is just that. It's an affirmative defense to an action in law. I would respond briefly. I know that this has been an issue. We asserted affirmative defenses under the Louisiana Constitution. Our briefing addresses the issue of federal pleading and the fact that, clearly, we haven't stated a federal constitutional defense. We need to because, as counsel has pointed out, the standards of the Louisiana Constitution and the federal constitution are the same. But be that as it may, even if it was construed to be a federal constitutional claim, that's precisely the sort of defense that the court in Matthew v. Rogers dealt with. The state law remedy that they found adequate in that case was a suit by the taxpayer paying taxes under protest and then suing to invalidate the tax statute because it's unconstitutional. And the court expressly said he could bring that action to federal or state court. Nothing about Levin changes anything about the prior precedents dealing with the tax abstention doctrine or the very clear statement and policy of Quackenbush. There has to be, for the court to abstain, there has to be the existence of a discretionary relief. An affirmative defense to an action at law is not a claim. It will not result in a declaratory judgment. It will not result in an injunction. It will result in an adverse ruling on their claim to recover taxes. That is perfectly within the cognizance of federal courts. And, again, nothing in the historical evolution or precepts that underlie the tax abstention doctrine warrant abstention, justify abstention, or call for abstention in a case such as this. So I would, again, ask the court to reverse the district court below and find that it was improper in abstaining in this case. I'd also like to apologize to the court. I recently started a course of treatment for a condition, and I perhaps maybe underestimated the effect. So I apologize if I've been unable to be fully. That's okay. Thank you. You've concluded your argument? I am. Thank you very much. Okay. Counsel, thank you for your briefing in this case and for your presentations here today. The court will take the matter under advisement. This will conclude this panel's work in terms of oral arguments, and court will adjourn.